IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division

STACEY LASSITER,

    Plaintiff,

v.                                                                                        Civil Action No. **3:15CV439**

DOCTOR JAMALUDEEN, *et al.*,

    Defendants.

## MEMORANDUM OPINION

Stacey Lassiter, a former Virginia prisoner proceeding *pro se* and *in forma pauperis*, brings this action pursuant to 42 U.S.C. § 1983. The matter proceeds on Lassiter's Particularized Complaint ("Complaint").[1] Lassiter alleges that, during his confinement in the Virginia Beach Correctional Center ("VBCC"), Dr. Abdul Jamaludeen and Physician Assistant ("PA") Catharine Cartwright ("Defendants") denied him adequate medical care. Specifically, Lassiter asserts that:

Claim One     Despite Lassiter's medical condition which required that he be assigned to a bottom bunk, Defendants failed to assign Lassiter to a bottom bunk upon Lassiter's arrival at the VBCC. (Compl. 1.)

Claim Two     Defendants denied Lassiter prompt and adequate medical care after Lassiter fell from his top bunk. (*Id.* at 1–2.)

Defendants have moved for summary judgment. Lassiter has not responded. For the reasons set forth below, the Motion for Summary Judgment (ECF No. 42) will be GRANTED.

## I. STANDARD FOR SUMMARY JUDGMENT

Summary judgment must be rendered "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). It is the responsibility of the party seeking summary judgment to inform the court of the basis for the motion, and to identify the parts of the record which demonstrate the

---

[1] The Court employs the pagination assigned to the Complaint by the CM/ECF docketing system.

absence of a genuine issue of material fact. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). "[W]here the nonmoving party will bear the burden of proof at trial on a dispositive issue, a summary judgment motion may properly be made in reliance solely on the pleadings, depositions, answers to interrogatories, and admissions on file." *Id.* at 324 (internal quotation marks omitted). When the motion is properly supported, the nonmoving party must go beyond the pleadings and, by citing affidavits or "'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" *Id.* (quoting former Fed. R. Civ. P. 56(c) and 56(e) (1986)).

In support of his Motion for Summary Judgment, Defendants have submitted: (1) Jamaludeen's Declaration (Mem. Supp. Mot. Summ. J. Ex. 1 ("Jamaludeen Decl."), ECF No. 43–1); (2) Cartwright's Declaration (*id.* Ex. 2 ("Cartwright Decl."), ECF No. 43–2); and, (3) a copy of Lassiter's Medical Records (*id.* Ex. 3, ECF No. 43–3).

As Lassiter failed to respond, Lassiter fails to cite the Court to any evidence that he wishes the Court to consider in opposition to the Motion for Summary Judgment. *See* Fed. R. Civ. P. 56(c)(3) (emphasizing that "[t]he court need consider only the cited materials" in deciding a motion for summary judgment). Lassiter's complete failure to present any evidence to counter Defendants' Motion for Summary Judgment permits the Court to rely solely on Defendants' submissions in deciding the Motion for Summary Judgment. *See Forsyth v. Barr*, 19 F.3d 1527, 1537 (5th Cir. 1994) ("'Rule 56 does not impose upon the district court a duty to sift through the record in search of evidence to support a party's opposition to summary judgment.'" (quoting *Skotak v. Tenneco Resins, Inc.*, 953 F.2d 909, 915 & n.7 (5th Cir. 1992))).

Accordingly, the following facts are established for the Motion for Summary Judgment. The Court draws all permissible inferences in favor of Lassiter.

## II. UNDISPUTED FACTS

Lassiter entered the VBCC on or around October 21, 2014 and underwent an intake evaluation. (*See* Jamaludeen Decl. ¶ 7.) At that time, Lassiter had no medical conditions that warranted a bottom bunk assignment. (*Id.*)

On October 23, 2014, after reporting that he fell from his bunk three days earlier and hurt his left thumb and right shoulder, Lassiter was seen in the Medical Department by PA Cartwright. (Cartwright Decl. ¶ 8.) Lassiter "had good strength and movement in the thumb and shoulder, but some pain." (*Id.*) PA Cartwright prescribed medications, including Mobic, a nonsteroidal anti-inflammatory for his injuries, and Lassiter was told to follow up in 30 days. (*Id.*)

On November 10, 2014, an LPN saw Lassiter and Lassiter reported that he could not lift his right arm. (*Id.* ¶ 9.) However, in the clinic, Lassiter was observed lifting his arm without difficulty. (*Id.*)

On November 12, 2014, Lassiter was examined by an RN and Lassiter was in no distress. (*Id.* ¶ 10.) Lassiter could move his arm, but with pain. (*Id.*) A different anti-inflammatory was prescribed and PA Cartwright ordered an x-ray. (*Id.*) The x-ray ordered by PA Cartwright of Lassiter's shoulder was done on November 14, 2014. (*Id.* ¶ 11.) That x-ray showed a Grade 1 acromioclavicular separation but normal soft tissues. (*Id.*) Dr. Jamaludeen notes that, "Grade 1 separation is the mildest form of this injury, and is not really a separation, but rather, a non-displaced sprain, typically accompanied by local pain. Treatment for this is always non-surgical initially, and in most cases, symptoms will resolve within 4–6 weeks." (*Id.* ¶ 12.)

On November 25, 2014, Lassiter returned to the Medical Department and was seen by PA Cartwright. (Cartwright Decl. ¶ 13.) Lassiter "complained of problems sleeping from the shoulder discomfort, hemorrhoids, dry scalp, and dry feet." (*Id.*) PA Cartwright addressed

3

Lassiter's various complaints and prescribed a shoulder sling and an extra blanket for shoulder support. (*Id.*)

On January 12, 2015, Dr. Jamaludeen saw Lassiter for the first time for Lassiter's shoulder issues. (Jamaludeen Decl. ¶ 14.) At that time, Lassiter reported that the pain awakened him from sleep. (*Id.*) Dr. Jamaludeen's examination revealed tenderness to palpation in the area of the right biceps tendon. (*Id.*) Dr. Jamaludeen adjusted Lassiter's medication and ordered an orthopedic consult to rule out a biceps tendon rupture. (*Id.*)

Dr. Jamaludeen saw Lassiter again on February 2, 2015. (*Id.* ¶ 15.) Dr. Jamaludeen noted that the external rotation of the shoulder was poor. (*Id.*) Dr. Jamaludeen ordered ointment and added another anti-inflammatory to Lassiter's medication regime. (*Id.*)

Dr. Jamaludeen next saw Lassiter on March 5, 2015. (*Id.* ¶ 17.) By that time, Lassiter had been seen by the orthopedic specialist and received a cortisone injection. (*Id.*) Lassiter still complained of pain, but his main complaint was urinary issues. (*Id.*)

On March 24, 2015, PA Cartwright saw Lassiter. (Cartwright Decl. ¶ 18.) Lassiter threatened to "act out and go to the hole" if he was not given a bottom bunk. (*Id.*) PA Cartwright added Neurontin, which is used to treat nerve pain, to Lassiter's medication regime. (*Id.*)

On April 20, 2015, PA Cartwright again examined Lassiter. (*Id.* ¶ 19.) PA Cartwright informed Lassiter that the orthopedic doctor wanted Lassiter to start doing range of motion exercises. (*Id.*) Lassiter had not been using his sling and stated that he only wanted "strong pain medicine." (*Id.*) Lassiter did not appear to be in any acute distress. (*Id.*)

Dr. Jamaludeen saw Lassiter on May 8, 2015, and at that time, Lassiter reported that the Elevil was helping a lot for his shoulder pain. (Jamaludeen Decl. ¶ 20.)

4

On July 7, 2015, PA Cartwright discontinued Lassiter's "no top bunk" status, after Lassiter was seen playing full contact basketball with both arms and no evidence of pain.. (Cartwright Decl. ¶ 21.)

On September 3, 2015, Dr. Jamaludeen saw Lassiter for his shoulder. (Jamaludeen Decl. ¶ 22.) Lassiter was "begging for stronger pain meds" for his right shoulder. (*Id.*) Lassiter also claimed he had hurt his left elbow in a fall. (*Id.*) No acute distress was noted, but Dr. Jamaludeen made some medication adjustments and provided an ace bandage for Lassiter's elbow. (*Id.*)

On December 2, 2015, Dr. Jamaludeen saw Lassiter for a rash and left elbow pain which Lassiter asserted began two months ago after a fall. (*Id.* ¶ 23.) During this visit, Dr. Jamaludeen treated Lassiter's diabetes, his complaints of pain, assessed his blood pressure, and ordered an x-ray of Lassiter's elbow. (*Id.*) The x-ray did not reveal a fracture. (*Id.*)

On January 23, 2016, Lassiter reported to the Medical Department for a chronic cough. (*Id.* ¶ 24.) Lassiter did not voice any complaints about his shoulder. (*Id.*)

On February 26, 2015, Lassiter again reported to the Medical Department. (*Id.* ¶ 25.) Although Lassiter mentioned his elbow, he did not mention his shoulder and most of his complaints dealt with urinary matters. (*Id.*)

Dr. Jamaludeen last saw Lassiter on October 23, 2016 for complaints related to gastric reflux. (*Id.* ¶ 27.) Lassiter did not voice any concerns about his elbow or his shoulder. (*Id.*)

On or about November 14, 2016, Lassiter was released from the VBCC.

### III. ANALYSIS

To survive a motion for summary judgment on an Eighth Amendment claim, Lassiter must demonstrate that Defendants acted with deliberate indifference to his serious medical needs. *See Brown v. Harris*, 240 F.3d 383, 388 (4th Cir. 2001). A medical need is "serious" if it

"'has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention.'" *Iko v. Shreve*, 535 F.3d 225, 241 (4th Cir. 2008) (quoting *Henderson v. Sheahan*, 196 F.3d 839, 846 (7th Cir. 1999)).

The subjective prong of a deliberate indifference claim requires the plaintiff to demonstrate that a particular defendant actually knew of and disregarded a substantial risk of serious harm to his person. *See Farmer v. Brennan*, 511 U.S. 825, 837 (1994). "Deliberate indifference is a very high standard—a showing of mere negligence will not meet it." *Grayson v. Peed*, 195 F.3d 692, 695 (4th Cir. 1999) (citing *Estelle v. Gamble*, 429 U.S. 97, 105–06 (1976)).

> [A] prison official cannot be found liable under the Eighth Amendment for denying an inmate humane conditions of confinement unless the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference.

*Farmer*, 511 U.S. at 837. *Farmer* teaches "that general knowledge of facts creating a substantial risk of harm is not enough. The prison official must also draw the inference between those general facts and the specific risk of harm confronting the inmate." *Johnson v. Quinones*, 145 F.3d 164, 168 (4th Cir. 1998) (citing *Farmer*, 511 U.S. at 837). Thus, to survive a motion for summary judgment under the deliberate indifference standard, a plaintiff "must show that the official in question subjectively recognized a substantial risk of harm. . . . [and] that the official in question subjectively recognized that his actions were 'inappropriate in light of that risk.'" *Parrish ex rel. Lee v. Cleveland*, 372 F.3d 294, 303 (4th Cir. 2004) (quoting *Rich v. Bruce*, 129 F.3d 336, 340 n.2 (4th Cir. 1997)).

In evaluating a prisoner's complaint regarding medical care, the Court is mindful that, "society does not expect that prisoners will have unqualified access to health care" or to the

medical treatment of their choosing. *Hudson v. McMillian*, 503 U.S. 1, 9 (1992) (citing *Estelle*, 429 U.S. at 103–04). Absent exceptional circumstances, an inmate's disagreement with medical personnel with respect to a course of treatment is insufficient to state a cognizable constitutional claim. *See Wright v. Collins*, 766 F.2d 841, 849 (4th Cir. 1985) (citing *Gittlemacker v. Prasse*, 428 F.2d 1, 6 (3d Cir. 1970)).

With respect to Claim One, Lassiter fails to demonstrate that he had a serious medical need for a bottom bunk when he initially reported to the VBCC. Furthermore, he fails to demonstrate that either of the Defendants acted with deliberate indifference by failing to provide Lassiter with a bottom bunk when Lassiter arrived at the VBCC. Accordingly, Claim One lacks merit and will be DISMISSED.

Although Lassiter's shoulder injury constituted a serious medical need, Lassiter fails to demonstrate that Defendants acted with deliberate indifference to that need. Rather, the record reflects that Defendants were attentive and regularly monitored and treated that condition. Accordingly, Claim Two will be DISMISSED.

### IV. CONCLUSION

The Motion for Summary Judgment (ECF No. 42) will be GRANTED. The action will be DISMISSED.

An appropriate Order shall accompany this Memorandum Opinion.

Date: 10/20/17
Richmond, Virginia

/s/ John A. Gibney, Jr.
United States District Judge